## BROWN v. DALTON.
### No. 1017.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1932.

Weeks & Weeks, of New Iberia, for appellant.

C. Arthur Provost, of New Iberia, for appellee.

MOUTON, J.

The Old Spanish Trail is a state highway which runs westward from the town of Jeannerette through New Iberia on its way to the Texas line.

At about a couple of miles from Jeannerette the Old Spanish Trail is intersected by a gravel side road known as the Bay-Side Bridge Road, which runs north and south. This side road comes to a stop at the south line of the Spanish Trail where it forms a blind intersection. On the east side of this Bay-Side Bridge Road and on the southeastern corner where it intersects the Spanish Trail stand the large frame store building of Firmand Petitfils and a filling station.

In the intersection a collision occurred

between an auto which Clarence Lemaire was driving and one driven by R. C. Dalton, defendant. Plaintiff, Brown, who was sitting next to Lemaire on the front seat of his auto, was injured in the collision, brought this suit in damages against defendant, and recovered judgment for $771.50, from which defendant appeals.

It is shown that Brown was an invitee or guest of Lemaire, and the question presented for decision is as to whether he is entitled to damages as such.

Defendant who was driving on the side road, southward, testifies that when he got to the intersection and before entering it, he stopped his car, saw the car driven by Lemaire who was then coming westward on the Spanish Trail Highway, and which was at that time at a distance of about two hundred feet, as was verified by subsequent measurements. He says he took it for granted that the Lemaire car was traveling at a legal rate of speed and that he proceeded to go across the intersection. His testimony is that he made a left-hand turn when he entered the highway in going across. He testifies that he lived in the vicinity and always stopped before entering the intersection where there was a stop sign.

Mr. Bonvilain, whose residence is on the southwest corner of the Bay-Side Road where it adjoins the highway, says he frequently noticed that defendant stopped his car before entering the intersection. It is true, he says, that he did not see him stop on the occasion in question, but testifies that when he passed his home he was traveling at about fifteen miles an hour. If such was the usual or ordinary conduct of the defendant when getting to the intersection and that on the day in question he was going at the slow speed of about fifteen miles when he passed by the premises of Mr. Bonvilain, it would seem that it is very likely that, as usual, he stopped his car on the day the collision occurred. Besides, it clearly appears that neither Lemaire nor Brown could say whether defendant had stopped his car at the intersection as they saw him, as they testify, only a moment before they ran into his auto in the intersection. It also clearly appears that when the cars collided, or just before, defendant was merely creeping along at a speed of about five or six miles an hour, which authorizes the inference that he had stopped before going into the highway, as was testified to by him.

◼ It is unquestionably true that due to the Petitfils large frame building store and the filling station which stood on the southeastern corner of the intersection, that Lemaire, driver of the car in which plaintiff was sitting, did not have an uninterrupted view of the traffic upon the Bay-Side Road

entering the intersection for a distance of two hundred feet from such intersection.

In such cases, under subsection b, par. 3 of section 5 of Act No. 296, 1928, p. 633, the driver, when his view is obstructed as was the situation in the instant case, must not go at a speed exceeding fifteen miles an hour when within fifty feet of the intersection. If Lemaire, when within fifty feet of the intersection, had been going at fifteen miles an hour, as defendant was traveling at six miles when crossing the intersection, no collision could possibly have occurred. Defendant had the right to assume, as he says he did, that the Lemaire car was then traveling at a legal rate of speed and which entitled him to the right to go across the intersection as he proceeded to do.

This Bay-Side Road is graveled, is not a private roadway, connects two highways, is a state highway, and therefore comes within the purview of the provisions of the statute above referred to.

It was shown, however, by the imprints of the wheels of the cars on the pavement and the remnants of broken glasses from the autos, that the collision between the cars occurred south of the center line of the pavement. That fact is corroborated by the markings in red on the Jones' Map introduced in evidence as explained by the preponderance of the testimonial evidence in the case.

It further appears that not only had defendant crossed over this center line when Lemaire ran into his car, but that he had effected the turn to his left and was heading eastward towards Jeannerette south of that center line and was running parallel with it, when Lemaire, going westward, struck his auto.

It is appropriate to state here whether defendant entered the intersection first, or whether Lemaire failed to slacken his speed to the rate of fifteen miles an hour when fifty feet from the intersection as required by the statute regulating traffic on our public roads, are matters not necessary to be considered as essential for a correct solution of the case, as defendant had actually gone across the center line of the pavement, was headed eastward on the south thereof, was running parallel therewith when the Lemaire car was swerved to its left side across that center line and ran into defendant's car. When the cars collided it is not disputed that defendant was going at about five or six miles an hour, the rate of speed at which he proceeded in making his left turn across the pavement of the highway.

◼ The collision occurred on a bright day at about 11 o'clock in the forenoon, on the highway, a straight road, with no other cars, vehicles, or obstructions that could have

prevented Lemaire from seeing a car coming towards him on that highway.

Lemaire says he was traveling then at forty or forty-five miles an hour, and Brown, his guest, the plaintiff, estimated his speed at thirty-five or forty miles an hour. The concrete pavement on this highway is eighteen feet wide with shoulders on each side about six feet each, giving an open space of thirty feet from ditch to ditch. It is almost impossible to believe that if Lemaire had then been driving at forty or forty-five miles an hour, or at thirty-five or forty, according to Brown, that he or Brown would have failed to see the defendant's car in time to relax their speed to avoid a colllision with the other coming at about six miles an hour, unless Lemaire was inexcusably negligent and Brown, his guest, entirely listless, or could have failed to pass on their right side and to the left side of defendant's car, where there was an open space of nine feet on the pavement, and in addition of six feet on the shoulder of the roadway.

Emile Bourg testifies that he has a filling station located about seven hundred feet from the Petitfils filling station near which the cars collided. He says, on the morning in question, which he fixes at about 11:20, about the time the collision occurred, he was sitting at his desk and saw the Lemaire car going on the highway westward towards New Iberia. A few seconds after Lemaire passed his filling station, he heard the crash. His testimony is that Lemaire's car was traveling at about sixty miles an hour when it passed his garage.

Demire Wattigny happened on that morning to be fixing a punctured tire on his car when the Lemaire car passed him on the highway. A short while after Lemaire had gone by, he heard the crash; testifies that Lemaire was going pretty fast, and fixed the speed at which he was traveling at about fifty-five or sixty miles an hour.

When Lemaire passed the Bourg garage and Wattigny, who was fixing a tire, it must be noted he was then about seven hundred feet from the point of collision.

Lemaire testifies that when he struck defendant's car he was going forty-five miles an hour and says, "as fast as I could pick up," and that "he had everything wide open," in which he is corroborated by Brown, who says Lemaire had his foot on the accelerator and that "things were wide open." Lemaire and Brown testify that they had slackened their speed when they reached Goumer's house where they intended to pick up some young ladies. The Goumer house, where they say they had reduced their speed to ten or fifteen miles an hour, is situated at about two hundred feet west of Bourg's filling station, is on the highway, and therefore about five hundred feet from where the impact occurred.

It is shown, however, by Lemaire and Brown, that they did not look at the speedometer and little confidence can be placed on their testimony in which they refer to the speed to which they slackened or as to the rate of thirty, thirty-five, forty, or forty-five miles an hour to which they testify they were traveling when they ran into defendant's car.

Bonvilain, who lived across the highway from the point of collision, and who went to the scene soon after the accident, says that defendant's car which was heading eastward was kicked back about ten or twelve feet with its head pointing westward towards New Iberia. The proof is that the Lemaire car was lighter than the other, still the proof shows that the heavier auto was kicked and completely turned around at a distance of some ten or twelve feet from the point of impact.

The turning around of defendant's car, heavier than the other, and kicking it in the opposite direction about twelve feet, is another strong circumstance indicating that Lemaire was moving at an unusual velocity. In order to sustain his position that he was not going over forty-five miles an hour, Lemaire says they made a test of the pick-up of a car similar to the one he had been driving on the occasion in question. In reference thereto, he was asked if the test or try-out was made between the Goumer house and the Petitfils garage, to which he answered that it was. In that test, he says, the pick-up of the car between these two points had not exceeded thirty-eight miles an hour.

There is nothing to show that in this try-out he had started eastward of the Goumer house and had merely slackened his speed when he got there and from there had everything opened "wide," as testified to by him and Brown. Obviously, even if Lemaire on the day of the collision did slacken his speed when he reached the Goumer house with the idea of picking up the girls there who failed to show up, the momentum of his car was such that when he placed his foot on the accelerator and "opened wide" his auto must have attained its highest speed, and no doubt was moving before he reached the Petitfils garage at the rate of fifty, fifty-five, or sixty miles, the velocity at which it was moving when it passed the Bourg filling station and Wattigny who happened to be on the highway repairing a punctured tire of his auto.

From the narrative of the foregoing facts to which we have given the closest analysis, we are irresistibly led to the conclusion that Lemaire was driving at the maximum speed of his car, at a reckless and inexcusable speed particularly as he was nearing an intersection on the highway.

Lemaire testifies that when he first saw defendant's car it was fifteen or twenty feet from his car, which again demonstrates that he must have had his mind away from what he was doing, otherwise it is obvious that on that highway with nothing intervening between the two cars as they were coming towards each other, he could not have failed to have seen defendant's car at a much greater distance, we may say, if he had only thrown a casual glance ahead of his auto.

It is clear that Lemaire could not have recovered damages if he had claimed any, and the sole question presented is as to whether Brown, as a guest, is entitled to such relief.

■ In the case of Delaune v. Breaux, 18 La. App. 609, 135 So. 253, Freddie Delaune was killed in a collision of a car with a truck in which he was riding as the guest of Leon Breaux, driver of the auto. This case was taken up to the Supreme Court on certiorari, where it was affirmed with slight, and we think appropriate changes in the language we had used in the opinion rendered by this court.

We had based our opinion largely on the case of Churchill v. Texas & Pac. R. Co., 151 La. 726, 92 So. 314, 315, where the court said:

"Churchill, not having charge of the operation of the machine, was not required to keep a lookout for danger, but could rely upon the discharge of that duty by the driver, who was responsible for its operation."

In commenting on the doctrine thus announced in the Churchill Case, we said in the Delaune Case that to a reasonable extent the guest could rely on the care and proper management of the one operating the car. In reviewing our opinion in the Delaune Case, the Supreme Court said that the automobile guest need not constantly keep a lookout for unexpected dangers but may rely reasonably on the driver, and must exercise reasonable care to protect himself.

As the court said that the guest may place a reasonable reliance on the driver and must exercise reasonable care for his own protection, it follows therefrom that he cannot entirely and implicitly rely on the one operating the car. If he were permitted to such complete reliance, the guest could go to sleep on the front seat or rear of the auto, allow the driver without protest to go at breakneck speed, without regard to the conditions of the roadway, and in all cases, if injured, would be entitled to recovery. Such a doctrine would be violative of every rule of law or of common sense.

■ Plaintiff, the guest of Lemaire, alleges in his petition that he knew the road at the point where the collision occurred and the rights of drivers under the existing conditions. The proof sustains this allegation. As plaintiff had this information he was clearly under the obligation when Lemaire's car approached the intersection to have been watchful of the entering of cars in the intersection by the way of the Bay-Side Road.

Brown admits that he told an insurance investigator that he saw the defendant's car coming towards the intersection on the Bay-Side Road. In making that statement he explains that he did not remember anything before the wreck, but remembered, however, that he made that statement. On cross-examination he says he made a mistake when he so stated to the agent, and again explains that he was induced to make it by the skillful suggestions of the investigator.

It is certain that Brown did not apprise Lemaire of the coming of the defendant's car towards the intersection, and if we held him to that statement, for his failure to warn Lemaire, we would have to hold that he was guilty of negligence and could not recover under the ruling of the Supreme Court in Delaune v. Breaux, 174 La. 43, 139 So. 753, 754.

We shall, however, consider the case on other grounds which, we find, debar him from recovery.

■ In the Delaune Case the Supreme Court said that the duty did not devolve on the guest to keep a lookout for unexpected dangers or sudden emergencies. No doubt this is a correct statement of the rule of law in reference to the obligations of an automobile guest.

■ Brown testifies that he was near a tree in front of the Petitfils garage when he first saw defendant's car and was then at about twenty-five or thirty feet from the spot where the cars collided. He was sitting on the front seat in Lemaire's car, and it is obvious if he had merely glanced ahead of him or had exercised the most ordinary observation, he would on that wide open highway have seen the other car at a distance of at least two or three hundred feet and could have had ample time to call Lemaire's attention to the advancing car, who according to Lemaire's own testimony was also entirely inattentive and more so than Brown, as he testifies he first saw defendant's car when it was only fifteen or twenty feet from him. Common prudence and ordinary care demanded of Brown, as a guest, to look ahead of the car in which he was traveling. It is true that under the rule above quoted from the Delaune Case, being a guest, Brown was not required to look out for unexpected dangers or sudden emergencies, but such was not then the situation presented, as the coming of the defendant's car at the moderate speed of five or six miles an hour on the south side of the center line of the pavement where it had a right to travel could not possibly be classified as a sudden emergency or unexpected danger.

Brown says, as before observed, that Lemaire had his foot on the accelerator and had everything wide open and realized that he was traveling at a fast rate of speed, but says he did not ask him to stop or to go slower and entered no protest.

Asked if he realized that Lemaire was going fast and relied on him to keep a lookout, his answer thereto is: "He was driving." This answer reveals the whole situation and throws full light on the evidence, and clearly shows that Brown took no concern of what was going on, concurred in and consented to the reckless driving of the car by Lemaire in whom he placed his entire and implicit reliance, although under the rule above referred to he could have relied on him only reasonably at the same time being required to exercise reasonable care for his own protection. The evidence of Brown shows that when he first saw defendant's car it was about twenty-five feet ahead, that it was then that he put the brakes on and hollered to Lemaire "watch out man." It was at that time that the Lemaire car, it is contended, swerved and was swung to the left across the center line of the pavement and collided with the other car. It may be contended that a sudden emergency arose at that time; that if an error was made in the swerving of the car neither Lemaire nor Brown is chargeable with negligence for having failed to exercise better judgment in their attempt to extricate themselves from the difficult situation thus created. If they had been confronted with a sudden emergency there would be ground for such a contention as has been held in several decisions. Such was not the case, however, as it is shown that defendant's car was heading eastward and was moving at the slow speed of about six miles an hour when the collision occurred, and was coming on a highway thirty feet in width with a clear view ahead. Evidently, under such circumstances the defendant's car should have been seen long before Brown shouted a warning, and hence it is obvious there was no sudden emergency to authorize the application of the rule hereinabove referred to. If the situation existing at the time of the collision can be characterized as a sudden emergency, it was the result of the negligence of Lemaire, driver, who could not have claimed exoneration because he had created the emergency. Brown, his guest, evidently acquiesced in the fast driving, was entirely heedless, else he would have seen defendant's car in time to have given a warning to prevent the collision; his conduct was such that he cannot urge there was a sudden emergency but which did not arise as above explained.

In the Delaune Case we referred to the Churchill Case, where the deceased saw the train almost at the instant of the collision, shouted a warning, too late, and, being a guest, was exonerated of negligence. In that case the railroad track was obstructed by a field of green corn, and the train suddenly appeared, nearing the path of the auto; hence there was a sudden emergency presented in that case which authorized the application of the doctrine in question.

In our opinion in the Delaune Case a truck had stopped at night, on the side of the road the car was traveling on where the driver of the truck was engaged in fixing a tire, and was using a flash-light, also had a tail-end light attached to the truck. In that case, Delaune, the guest, saw the truck at about the same time it was seen by Breaux, the driver, and Delaune shouted, "look out," but not in time to save his life. We said there that the guest is always expected to exercise reasonable care, but was not required to be looking out for unusual obstructions, as the parking of a truck on the side of the highway; that such duty devolved on Breaux who was driving the car, as the guest was not expected to exercise the same vigilance as is demanded from the one operating the car. The conditions which existed in the present case are quite different from those which appeared in the Delaune Case.

This case rather falls under the doctrine which holds that neither occupant of a car can recover damages when it appears that the proximate cause of the accident was the failure of both to have seen what each of them should have seen, and recognized in several decisions cited by us in the Delaune Case, where we held that this rule was inapplicable to the facts of that case.

In that case, we said that the rule applies where the danger is so apparent or the circumstances are such that the guest is chargeable with negligence of his own or with independent negligence if he gives no warning or protest to the driver.

Here, it is evident that both Lemaire and Brown should have seen the defendant's car in ample, and in more than sufficient, time to have relaxed their speed or to have safely passed to the left of the other car.

Lemaire was seventeen years of age, and Brown, nineteen; it is true, not too young, either of them, not to be trusted with the operation of an auto, but yet in the flush of youth, at that period of life when caution, the child of experience, is not usually well developed.

We are satisfied that Lemaire was traveling as fast as he could possibly go when he says he relaxed his speed to pick up the young ladies on the side of the highway, and not finding them, doubtless, redoubled his speed as he dashed on the highway westward towards New Iberia, and that Brown, his guest, was perfectly willing to enjoy this exhilaration. In driving at that velocity, with their thoughts perhaps on more engaging subjects, they failed to see defendant's car in

time, which was the proximate cause of the disaster. Lemaire was inexcusably negligent and by his acquiescence in this reckless driving, Brown, the guest, was equally at fault.

█ We have dwelt at length in the beginning of this opinion on the proposition as to whether or not defendant, Dalton, was at fault in entering the intersection, because this was forced upon us by the contention of counsel. For the reasons hereinabove stated, we find he was not at fault, but whether negligent or not, it clearly appears that Lemaire was manifestly at fault which, for the further reasons given, must be imputed to Brown, his guest. The rule is well settled that when both plaintiff and defendant are at fault in a collision, that neither can recover. Taking this case from any point of view of which it is susceptible, as we see it, we find that our learned brother of the district court has fallen into reversible error in rendering judgment in favor of plaintiff which must be avoided.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and that the demand of the plaintiff be rejected at his cost in both courts.

LE BLANC, J., dissenting