The plaintiff Robert Benton Delaune has filed this suit against the defendant Millard B. Crawford in which he is claiming damages in the sum of $331.34 plus interest at the rate of five per cent from date of judicial demand until paid and for all costs as the result of an automobile collision between plaintiff's automobile driven by his nineteen year old daughter, Betty Delaune, and defendant's automobile being personally operated by the defendant. This accident occurred near the easterly end of the overpass of the Perkins Road over the tracks of the Louisiana and Arkansas Railway Company, just outside the limits of the City of Baton Rouge on February 14, 1948, either at or shortly after the noon hour. Visibility was good and the weather clear.
Plaintiff alleged that his automobile was being driven in a general easterly or southeasterly direction on the Perkins Road and the driver, upon approaching the easterly end of the overpass, gave a proper signal for a left turn and slightly turned to the left, so as to drive plaintiff's automobile off the Perkins Road and into a parking space near a grocery store; that the overpass where the Perkins Road crosses the railroad track is both curved and inclined so that automobiles traveling as plaintiff's. Plymouth was traveling while approaching the overpass traveled upward to the crest of the overpass and then down toward the easterly end of this overpass, the easterly portion of this overpass being curved to the left or towards the north; that plaintiffs Plymouth automobile had been driven almost off the Perkins Road and only the rear portion of this automobile was on the Perkins Road, near the east end of the overpass when the Plymouth automobile was struck by the defendant's automobile which had also been traveling in the same direction as plaintiff's automobile but to the rear of plaintiff's automobile.
Plaintiff charges the defendant with traveling at an excessive and dangerous *Page 95 
rate of speed which was grossly excessive under the circumstances and which amounted to negligence which was a proximate cause of the accident; that defendant was traveling at an excessive rate of speed upon a public bridge, causeway or viaduct, and at a speed which was unsafe; that defendant was not driving on the right side of the street or highway and that this amounted to negligence which was also a proximate cause of the accident; that defendant's automobile was attempting to overtake and pass another vehicle and had already overtaken and passed one other vehicle at a time when the left side of the highway was not visible and free of on-coming travel for a sufficient distance ahead to permit such overtaking and passing, and that this amounted to negligence which was a proximate cause of the accident; that defendant was negligent in attempting to overtake and pass plaintiff's automobile while approaching the crest of a hill and on a substantial grade and while approaching and entering in a curve where his view was obstructed within a distance of five hundred feet; that defendant was also further negligent in attempting to pass another vehicle proceeding in the same direction without giving any audible and sufficient warning of his intention so to do, which was a proximate cause of the accident; that defendant failed to slacken the speed of his automobile when he saw or should have seen plaintiff's Plymouth automobile making a slow and gradual turn to its left, and failed to steer his automobile to the right so as to pass to the right of and behind plaintiff's Plymouth automobile; that defendant was not keeping a proper lookout and failed to see or saw and failed to heed plaintiff's automobile which was being properly operated and that this amounted to negligence on the part of the defendant driver, which was a proximate cause of the accident.
Plaintiff prayed for judgment against the defendant, Millard B. Crawford, and American Fire and Casualty Company of Orlando, Florida, which was the insurer of the defendant's automobile, for $331.34.
The defendant's answer was a general denial of plaintiff's allegations and then, in the alternative, he plead contributory negligence on the part of Betty Delaune, plaintiff's unemancipated minor daughter, who was driving the car at the time of the collision, in that she failed to keep the automobile she was driving under proper control and that she failed and neglected to keep a proper lookout and that she attempted to make a left-hand turn across a heavily traveled highway without warning and without ascertaining that such left-hand turn could be made without danger to normal overtaking or on-coming traffic, as required by Act 286 of 1938, Section 3, Rule 9. Defendants further assumed the position of plaintiff in reconvention and prayed for judgment against the plaintiff Delaune in favor of the defendant Millard B. Crawford, individually in the sum of $50.00, and in his favor for the use and benefit of the American Fire and Casualty Company in the additional sum of $133.40, together with legal interest and all costs.
The case was duly tried and for the oral reasons which were dictated to the Court Stenographer and are in the record, the Judge of the District Court rendered judgment in favor of the plaintiff as prayed for and rejected the reconventional demand of the defendant.
The defendant filed an application for rehearing which was denied, whereupon the defendants have appealed from this judgment.
The facts show that about noon on February 14, 1948, Miss Betty Delaune, 19 year old daughter of the plaintiff, was driving plaintiff's Plymouth automobile on Perkin's Road, going to Saia's Grocery store which is to the left of this Perkins Road, close to the easterly end of a railroad overpass. In the car with her at the time was her younger sister, Bennie Nell Delaune. It is shown that this overpass, as stated in plaintiff's brief and also as shown by the record, is:
"* * * A 'hump-backed' overpass, and as a motorist travels away from Baton Rouge and approaches the overpass, the overpass itself curves to that motorist's left. The overpass is rather long, is considerably higher in the middle than on each end, and is itself a left curve as one travels away from Baton Rouge. A vehicle on the Baton Rouge side of the overpass cannot *Page 96 
be seen from the opposite end of the overpass, because of the high 'hump' in the middle, and the curve."
When the plaintiff's daughter, Miss Betty Delaune, neared a point in front of Saia's grocery, the testimony shows that she slowed, made a left-hand turn across the road and when all except the rear end of her car had cleared the highway she was suddenly struck by the defendant's automobile at her right rear fender, which also bent in the trunk of plaintiff's car.
Mr. Jesse Shepherd, a witness on behalf of the plaintiff, testified that on the date of the accident he was engaged in the construction of the roof on his building which was 10 or 15 feet above the level of this overpass and was so located that he could see traffic coming up on the overpass and going down; that he was about 150 feet from the accident when it happened; that he had unobstructed view. His testimony is to the effect that the defendant Crawford was coming fast over this overpass and that there were three cars on the overpass — the first was the plaintiff's car, next a car following plaintiff's car and then the defendant's car, and that the defendant, before he got off of the overpass, pulled over into the left-hand side or northbound traffic lane in an attempt to pass the car which was following the plaintiff's car, and at that time the witness states he remarked: "My God, look at that man coming across there," referring to the defendant. Shepherd further testified that at the time of the collision the plaintiff's car was practically off the road. The plaintiff's car was knocked around and the little girl, Bennie Nell Delaune, was thrown out of the car, however, she was not seriously injured. Shepherd immediately went to the scene of the accident and there heard defendant Crawford state that he wanted to pay the damages, that he had had too many wrecks and did not want his insurance company to know about it. Shepherd's version of the accident is that Crawford was on the extreme left-hand side of the overpass as he was coming off of it and he tried to go around the car which had been following plaintiff's car and he could not get back into his proper lane of traffic quick enough after passing this car to avoid striking the plaintiff's car.
Wilfred Hamilton was called as a witness on behalf of the plaintiff and testified that he was a brother-in-law of the plaintiff and that on the day of the accident he was approximately a block away when he heard the collision. He first heard the brakes and then the collision and he immediately turned around and went back to the scene of the accident, arriving there "not more than a minute" after it occurred. He made an inspection of the road of the overpass and stated that toward the bottom of the overpass on the left side that skid marks began about two feet from the curb and were about 50 or 75 feet in length, and that they stopped at approximately 30 feet from the scene of the accident. This witness further testified that the left front fender and bumper of defendant's car struck the left rear fender, "* * * came right straight into it, it bent the turtle back, the trunk part was bent up" of the plaintiff's car. He heard part of the conversation between Shepherd and the defendant Crawford, and he heard Shepherd tell Crawford that "If he didn't stop coming down that overpass so fast he would kill somebody and he shook his finger in his face. He mentioned, it seems he had seen him come down the overpass before."
Robert Delaune, plaintiff and owner of the Plymouth automobile involved in the wreck, testified that on the date of the accident he was sick with influenza but that either that day or the next day, the defendant Crawford talked to him and told him he had had three serious accidents recently and he would not like the insurance company to know about this one and stated that he was not able to have the car fixed but offered to take it out to L.S.U. where he worked and fix it himself, but plaintiff did not agree to this. He testified that Mr. Voigt, the representative of the insurance company, came to his home with Mr. Crawford and told him that "it looked like Mr. Crawford was at fault and to get three estimates and he would turn it in to the home office and get it repaired. Apparently looked like Mr. Crawford was in the wrong but it was not his place to say so." Three estimates were obtained and the plaintiff *Page 97 
testified that Voigt told him that he gave it to the Standard Motor Car Company as they were the lowest, and that he did not know that the insurance company had refused to pay the Standard Motor Car Company until after the car was fixed, some two or three weeks later, when he called Mr. Voigt and he told him at that time that the insurance company refused to pay, that they considered both equally wrong. This witness further testified that Voigt told him over the telephone as well as Mr. Caffarel, who was the shop foreman of the Standard Motor Car Company of Baton Rouge, Louisiana, that the insurance company had authorized the repairs.
Betty Delaune, the driver of the plaintiff's automobile, testified that on the date of the accident she, together with her fourteen year old sister, Bennie Nell, were on their way in the car to Saia's grocery, across the overpass on Perkins Road; that prior to making her left-hand turn she looked in the rear view mirror and she did not see any cars coming behind her but she doesn't remember whether she put her hand out or not, but in her statement to the insurance agent, she states that she always did but doesn't definitely remember whether she did on this occasion or not; that she turned across the road and the first time she realized the Crawford car was there was when it struck her automobile; that she was sure all of her automobile was off Perkins Road except the rear wheels, and that she was struck just behind the gas tank; that she had never been in an accident before and that she was accustomed to driving the car. Her testimony is to the effect that the cars must have been over the overpass because she did not see them. Bennie Nell Delaune also testified that practically all of the plaintiff's car was completely off of Perkins Road at the time it was struck.
Defendant Crawford testified that he is a steward at L.S.U. and that he was on his way from the University and as he reached this overpass on Perkins Road there was a car in front of him, going very slow; that he stayed behind it until after he got over the crest of the overpass and he then saw it was safe to go around so he went around the first car while still on the overpass and that he had plenty of time to get back into the lane of traffic between plaintiff's car and the car he passed, but plaintiff's car was also going slow and he decided to pass it in the same "operation," and by this time he was completely off of the overpass, that is, at the foot of it. He testified, "The next thing I knew the car was turning and instead of my left fender hitting her back, it was my right side that hit her left back. I didn't put on my brakes, I didn't have time and we stopped right in the middle of the road and at that time I saw the little girl fall out of the car." He also testified that he was watching the plaintiff's car "be-because I realized more or less I was doing a little something there that I should not do, and I was especially careful to see what was ahead of me." He further testified that the plaintiff's car made a quick turn and that Betty Delaune gave no signal of her intention to turn left across the Perkins Road.
The defendant testified that the day after the accident he went back to talk to the plaintiff and that at that time plaintiff told him if he would admit that he was in the wrong that he, plaintiff, would pay the $50.00 deductible on defendant's policy, as the plaintiff had no collision insurance on his car but only personal liability. However, the defendant states that he refused to do this. He states that he told the representative of the insurance company of this conservation, however, the representative of the insurance company did not testify to this nor did he put it in any report which he made to the insurance company. Under these facts and circumstances, we believe plaintiff's denial of this part of the conversation to be true. When asked if he offered to take the plaintiff's car out to the shop at L.S.U. and repair it himself, he stated that his proposition was to the effect that he had had some experience with mechanical business and that he did not have the money to have the car fixed but that if the plaintiff was in the wrong and had to pay for the repairs to his car, since he was sick that he would help him to the extent of taking it to L.S.U. to the automobile school and putting the parts on for him. This gives strength to plaintiff's testimony. *Page 98 
We believe the defendant did tell the plaintiff that he was not able to fix the car and did not want to report it to the insurance company due to his fear that the insurance company would cancel his insurance in view of previous accidents, and that immediately after the accident he admitted his fault and felt that he was at fault. Otherwise, he would have felt no hesitancy in reporting the accident to his insurance company. This witness also testifies that he was traveling approximately 20 miles per hour before the accident, however, we are convinced that the defendant was traveling at an excessive rate of speed, especially while on this overpass where the view is obstructed until you reach the crest and which also has a curve in the easterly end of it to the left or north and contains only two lanes of traffic.
The insurance agent, Voigt, testified that "naturally I saw that this was a questionable case, it seemed possible and only possible that our driver was at fault," referring, of course, to the defendant Crawford. He admits the conversation with the plaintiff in which he stated that the Standard Motor Car Company was "low on its bid to repair the plaintiff's car" but denies that he authorized Standard Motor Car Company to make the repairs. He also admits that the talked to some one in the Standard Motor Car Company who told him that the car was there and they wanted to know whether to make the repairs or not, and he told Standard Motor Car Company their estimate was low and they would be the ones to repair it "on my instructions from the company when and if they did give any," but that he never received any instructions from the company to repair the automobile. We are unimpressed with the testimony of this witness.
Counsel for defendant in his brief cites the case of Michelli v. Rheem Mfg. Co., La. App., 34 So.2d 264, page 268, to the effect that:
"It is well settled in Louisiana that the operator of a motor vehicle who desires to make a left turn, carries the responsibility of being certain that the turn can be made without danger to normal overtaking or oncoming traffic, and he must yield the right of way to such vehicles.
* * * * * *
"Counsel for defendants argue that Michelli, in traveling at the admitted speed of fifty to sixty miles an hour, violated this ordinance, and that the responsibility for the accident rests squarely upon his shoulders. We believe, however, that the speed of the Michelli car was not a contributing cause of the accident, as the collision could well have happened if it had been going twenty-five miles an hour, just the same as it was going fifty to sixty miles an hour."
Counsel for defendant also relies upon the case of Seale v. Stephens, Employers Cas. Co., La. App., 24 So.2d 651, 653, in which the Court said:
"It is well established in our jurisprudence and in our law that the making of a left turn on a much travelled highway is a very dangerous operation, requiring great care and caution. The responsibility for seeing that such a left turn can be made in safety is placed upon the driver desiring to make such left turn. The law, Highway Regulatory Act of 1938 (Rule 9, Section 3 of Act 286), requires a driver to ascertain before making such a left turn that there is no traffic approaching from either direction which will be unduly or unnecessarily delayed and requires him to yield the right of way to such approaching traffic."
The facts in the Michelli case, supra, were that a truck belonging to the defendant company was being driven toward Baton Rouge, Louisiana, on its right-hand side of the Airline Highway within the corporate limits of the town of Kenner, Louisiana. An automobile driven by Joseph L. Middleton was following this truck and another automobile owned and being operated by Michelli was proceeding south on its right-hand side of the highway or toward New Orleans at a speed of between 50 and 60 miles an hour. The truck driver, upon reaching Lyons Street, which is a gravel or shell street, made a left turn to leave the highway and enter Lyons Street, which runs at a right angle to the highway and enters it from the west or river side but does not cross the highway. When the cab of the *Page 99 
truck had entered Lyons Street and the semi-trailer had cleared the east traffic lane of the highway, Michelli, to avoid a collision with the truck, swerved his vehicle to the left to pass behind the trailer and collided head-on with the Middleton automobile which had been following the truck. The weather was clear, visibility good, and the roadway was dry.
The Court found that the plaintiff Michelli's car was very close to the truck when the turn was made, and also held that the speed of the Michelli car was not a contributing cause of the accident and that the driver of the truck should have yielded the right of way.
In the case of Seale v. Stephens, supra, the Court found that at the time the defendant began to make his left turn across the highway he was not in excess of 75 feet from plaintiff's on-coming car which was leading a line of traffic coming in the opposite direction; that the defendant attempted to make this left turn while traveling not in excess of 10 miles per hour; that the plaintiff was approaching in his own proper north lane of traffic not in excess of 40 miles per hour, and that the plaintiff applied his brakes at least 30 feet before the impact in an effort to prevent the collision, and the Court, therefore, held that the defendant, in attempting to make a left turn on the highway, did not use the proper care and caution such as the law required in making sure that the way was clear and that no oncoming automobile was close enough to be collided with.
In the present case, the testimony clearly shows that the driver of plaintiff's car made a slow turn across Perkins Road a short distance from the bottom of the easterly end of the overpass, and that prior to turning she looked in her rear view mirror and she failed to see any cars coming down the overpass. She states that she was of the opinion that the cars had not reached the crest or "hump" of this overpass at the time she looked in her rear view mirror. There is no doubt that this defendant was traveling at an excessive speed and was himself aware of the fact that he was acting in a negligent manner in passing automobiles while still coming down this overpass. We are of the opinion that Miss Betty Delaune was free of negligence, which is especially shown by the fact that the car that was immediately following her did not strike her automobile but apparently passed easily to the rear after she made her left-hand turn. Had she turned abruptly in front of this automobile, it should have been the one that struck her rather than defendant's automobile. From the facts in this case, the proximate cause of this accident was the excessive speed of the defendant's automobile, the fact that he was not keeping a proper lookout nor did he have his automobile under proper control, and also, had he remained in his proper lane of traffic rather than attempting to pass automobiles while still on the overpass, this accident would never have occurred, as the car which he was attempting to pass and which was following plaintiff's automobile was not involved in the wreck in any manner whatever, which conclusively shows that Miss Betty Delaune's judgment that she could make the left-hand turn was correct. Under the facts in this case, whether Betty Delaune gave the hand signal is immaterial as such failure on her part would not be a proximate cause of the accident.
The Trial Court in its reasons for judgment was of the opinion that the Crawford car, at the time that plaintiff's car was making the left turn, had not reached the crest of the overpass and, therefore, Miss Betty Delaune could not see him, and the accident was caused solely by the negligence of the defendant Crawford.
In the case of White v. American Employers Ins. Co. et al. La. App., 197 So. 803, 805, it was held:
"As to the question of contributory negligence on the part of Mrs. White, the worst that can be said is that she failed to see the Anderson car until just prior to the collision. It appears that the Anderson car must have been some three hundred feet or more ahead of her, coming in her direction, when she started to make the left turn. If she did look, as she says she did — and like *Page 100 
the district judge we see no reason to disbelieve her — and saw no oncoming traffic save the horse-drawn cart, for more than two hundred feet, she was not, as a matter of law, guilty of negligence. While a motorist in making a left hand turn on a highway in the face of oncoming traffic is required to exercise great caution and see that such turn can be made in safety, such a rule does not prevent the motorist from making the left hand turn if the oncoming traffic is of a sufficient distance to permit the execution thereof prior to the reaching of the oncoming traffic at the turning point. In judging whether or not such a left hand turn can be made in safety, a motorist has the right to assume that the oncoming traffic is traveling at a lawful speed and that the driver thereof is exercising a proper lookout and has the vehicle under proper control. Blashfield Cyclopedia of Automobile Law and Practice, Perm.Ed., Vol. 2, § 1049; Brown v. Dalton, La. App., 143 So. 672. Under the facts and circumstances of this case, we, like the district judge, have come to the conclusion that Mrs. White was not guilty of contributory negligence, and that the accident was caused solely by the negligence of defendant."
It was also held in the case of Brown v. Dalton, La. App., 143 So. 672, that: "Motorist reaching intersection on graveled state highway when car approaching on intersecting highway was about 200 feet away had right to assume that it was traveling at legal speed, in view of obstructed view, and to go across intersection (Act No. 296 of 1928, § 5, Subsec. b, Par. 3)."
In the present case, the automobile following Miss Delaune evidently had not reached the crest of the overpass at the time she looked in the rear view mirror, and she was therefore correct in assuming that should any come over, they would be coming at a legal rate of speed which would give her time to make her left-hand turn.
We are of the opinion that the defendant Crawford's negligence was the sole proximate cause of this collision. Accordingly, the judgment of the district court is hereby affirmed, the defendants to pay all costs.