JANVIER, Judge.
At about 3:30 o’clock, on the afternoon of September 11, 1949, at a point referred to by the parties as the 8% mile post on the highway leading out of New Orleans to the East, there occurred an automobile accident from which this litigation results. Two cars were involved, one belonging to Mr. Abraham Saba, Jr., which was being operated by Mrs. Saba, and the other belonging to Mrs. Edith Brown, which was being operated by Mr. William E. Wilkinson. The two cars were going in the same direction out of New Orleans to the East. The Saba car was leading, and as its operator, Mrs. Saba, attempted to turn to the left at an intersection, it was struck by the Brown car which was following.
Mr. Saba commenced litigation by filing suit to recover for the damage sustained by his automobile. He made both Mrs. Brown and Wilkinson defendants and prayed for solidary judgment against them in the sum of $300 and, alleging that Mrs. Brown, the owner of the other automobile, was not domiciled in the State of Louisiana, he sought and obtained a writ of attachment under which the Civil Sheriff for the Parish of Orleans was ordered to seize and take into his possession any property of the said Mrs. Brown which might be found in the said Parish of Orleans. Mr. Saba alleged that the accident had resulted from negligence on the part of the operator of Mrs. Brown’s car in that, while the Saba car was being operated in a “cautious and prudent manner to negotiate a lefthand turn,” and after the proper hand signal had been given, the Brown car, at a high rate of speed, was carelessly driven into its rear with the resulting damage.
Both Mrs. Brown and Wilkinson denied that there was any negligence on the part of Wilkinson, the operator of Mrs. Brown’s car, and averred that the accident had resulted from negligence on the part of Mrs. Saba in that she failed to notice that the Brown car was following her car and, after giving a hand signal indicating an intention to turn to the right, and after driving her car to its right to' the center of the highway, she suddenly turned it to the left and drove directly across the path of the Brown car which was following.
Mrs. Brown then alleged that the Saba car was being operated on a family mission, that there was a community of acquets and gains between Mr. and Mrs. Saba, and that accordingly Mr. Saba, as head of that community, was liable for the damage caused to Mrs. Brown’s car and for the physical injuries sustained by Mrs. Brown, and, by reconventional demand, she, Mrs. Brown, Prayed for judgment against Mrs. Saba in the sum of $5,953.65.
There was judgment dismissing both the main demand of Mr. Saba and the recon- *594 ventional demand of Mrs. Brown, and Mrs. Brown, plaintiff in reconvention, has appealed. Mr. Saha neither appealed nor answered the appeal taken by Mrs. Brown. Accordingly, the only question before us is whether there is liability in Mr. Saba in favor of Mrs. Brown.
At the point at which the accident occurred, the highway consists of two two-lane concrete driveways separated by a raised neutral ground. The witnesses stated that at the point at which the accident occurred the speed limit for passenger automobiles is 30 miles per hour.
The two cars with which we are concerned were being operated out of New Orleans towards the East in the general direction of the Mississippi Gulf Coast. The Saba car was in front and the Brown car was catching up with it from the rear. Ahead of the Brown car was a cross-road into which automobiles might turn either to the left or to the right.
Mrs. Saba did not take the witness stand, but two witnesses produced on behalf of Mr. Saba say that, as she approached that cross-road, she was near the left side of the driveway close to the neutral ground and that she extended her left arm through the open window and then attempted to turn to the left and that just as she did so, the Brown car, approaching from the rear, ran into the left rear portion of the Saba car.
One of these witnesses produced on behalf of Mr. Saba was Mr. W. R. McDonald, who was operating his own car on the 'other driveway going in the opposite direction. He says that he saw the Saba car close to the neutral ground and that “I seen the lady’s hand sticking out.” He also said that he saw that the Saba car was turning to its left and that he feared that it might cross the space of the neutral ground and enter the roadway ahead of him “so I cut my speed down, * * * and I seen this car (the Brown car) coming from the rear,” and “I seen he (Wilkinson who was operating the Brown car) was going to hit the car from the rear.”
The other witness who testified on behalf of Mr. Saba was John J. Julien, who also was driving his own car on the highway. He was going in the same direction as were the two cars involved here. He says that he was following the Saba car when “I heard a horn blowing behind me,” and he added that “I switched to the right lane and this car passed me about 40 or 45 miles an hour.” He said that he looked “down that side,” which obviously meant down the side of the neutral ground towards the point at which -the accident was about to occur, and he added: “I seen a car turning and the first thing you know I heard the crash.” He was asked: “Did you see Mrs. Saba give any hand signal?” and he answered: “I seen her hand sticking out as she was going along and I was right behind her.” He then demonstrated “the position of her hand as it was sticking out” and the judge said:
“The witness indicates she stuck her elbow and hand outside the door frame of the window.”
Mrs. Brown, on the other hand, says that she, sitting on the right front seat of her car, which was driven by Mr. Wilkinson, saw the Saba car ahead and that “she (Mrs. Saba) gave the signal to make a right turn.” She says that Mrs. Saba “held her hand up in the air like this.” She then said:
“Well, there is a road that cuts off to the right from the highway, I don’t know what it is, it is a paved road the way she signalled and was driving the car you would have thought she was going down that road, but instead of that she turned directly in front of us.”
Mr. Wilkinson, who was operating Mrs. Brown’s car, says that he was driving the Brown car at about 25 or 30 miles an hour, and that just before he came to the intersection he was in th® left lane, and “this lady was riding the middle of the yellow line.” He also said:
“I tooted my horn to go around the lady and she waved over to the right as though she was going to take the road to the right of the railroad tracks.”
He says that, as he attempted to pass, Mrs. Saba “Started over * * * almost in a *595 semi-horizontal position,” and that he applied his brakes immediately but could not avoid hitting the Saba car.
We do not find any physical facts which corroborate either version of the accident. No question of law is presented. If Mrs. Saba, driving her car along the highway intended to turn to the left and gave a signal indicating that intention, the accident would not have resulted but for negligence on the part of the driver of the Brown car. If, on the other hand, Mrs. Saba, driving along the highway indicated an intention to turn to the right and then, after pulling slightly to the right, suddenly turned to the left into the path of the Brown car, the fault was in her and not in the operator of the Brown car.
The district j.udge found both drivers at fault, Mrs. Saba apparently for the reason that the signal which she gave did not clearly indicate an intention to turn either way, and the operator of the Brown car in that, when Mrs. Saba, driving the car ahead of him, indicated an intention to turn and yet remained in the highway, he should have been careful to reduce his speed in order to make certain that he could stop without running into the Saba car whether it turned to its left or to its right. The district judge, in his reasons for judgment said:
“The court feels that there was a duty on the part of Mr. Wilkinson, when he saw the arm protruding from the Saba car, which was straddling the line between the two lanes, to have alerted himself so as to have his automobile under such control that he would not have driven it into the Saba car.”
The district judge also said:
“The court further feels that both drivers were operating their respective vehicles without due regard for the circumstances and conditions then and there existing, and that they were both negligent.”
The record leaves no room for doubt that Mrs. Saba gave a hand signal which both Mr. McDonald and Mr. Julien interpreted as indicating an intention to turn to the left. If that signal was carelessly given, it nevertheless should have been sufficient to put Mr. Wilkinson on guard against some unusual maneuver on the part of Mrs. Sa-ba. Instead of being on guard against such an occurrence, he continued, at excessive speed, until it was too late for him to stop Mrs. Brown’s car or to swerve it to its right and pass around the Saba car. His failure in this regard prevents recovery by Mrs. Brown.
- The judgment appealed from is affirmed at the cost of appellant.
Affirmed.