97 So.2d 674 (1957)
Clarence V. JOHNSON et al., Plaintiff, Defendants In Reconvention, Appellants,
v.
James R. WILSON, Defendant, Plaintiff In Reconvention, Appellee.
No. 4453.
Court of Appeal of Louisiana, First Circuit.
October 4, 1957.
Rehearing Denied November 19, 1957.
Writ of Certiorari Granted February 10, 1958.
*675 Seale, Kelton & Hayes, Baton Rouge, for appellant.
Joseph A. Gladney, Baton Rouge, for appellee.
TATE, Judge.
This damage suit results from a collision between appellant Johnson's overtaking automobile and appellee Wilson's left-turning pickup truck. Johnson and his liability insurer appeal from adverse judgment in favor of Wilson upon the latter's reconventional demand, after trial before a jury.
The accident in question occurred at approximately 1:00 p.m. on November 28, 1955, about eight miles north of Baton Rouge on the Plank Road, a two-lane, hard-surfaced State highway. Prior to the accident, both vehicles were travelling *676 northwards. Wilson was bringing his servant to her home, which was on the west (or his left) side of the highway.
As is not unusual, testimony produced on behalf of Wilson and that produced on behalf of Johnson is sharply contradictory. We see no need to detail the discrepancies. In reaching a verdict for appellee Wilson, the jury must necessarily have accepted Wilson's version of the accident. The factual determinations of the trier of fact, particularly when based upon an evaluation of the credibility of opposing witnesses, should not be disturbed on appeal unless manifestly erroneous. Jones v. Jones, 232 La. 102, 93 So.2d 917; Fouquier v. Fouquier, 231 La. 430, 91 So.2d 591; Guidry v. Crowther, La.App. 1 Cir., 96 So.2d 71. Furthermore, the District Court, who saw and heard the witnesses, refused to grant a new trial upon the appellants' application for same.
We think, therefore, that for appellate purposes the facts as shown by the testimony accepted by the trier of fact as correct, somewhat corroborated by the physical circumstances of the accident, must be taken to be proved to be as follows:
At the place of the accident, the highway passes through open country, and was a relatively straight stretch. Approximately 500' from where he was to turn left into his maid's gravelled driveway, Wilson observed Johnson's car approaching from his rear at a distance of from one-fourth to one-half mile; and he commenced rolling his glass down and made his manual left turn signal approximately 400' from the intended turn. When Wilson was 80-100' from his turning point, he saw the Johnson car again in his rear view mirror this time 300-400' behind; he looked for traffic coming from the north and, seeing none coming, pulled over astraddle the center line. At the time of commencing this gradual left turn, Wilson was some 70' south of his maid's driveway, and had slowed the speed of his vehicle from 35 m. p. h. to 20 m. p. h.
Wilson's truck was struck when his front wheel was approximately four feet to the left of the center line and the rear wheel approximately two feet left thereof, and when he was 35' south of his maid's driveway. His left rear wheel was knocked forward, and his truck overturned; impact was made by Johnson's right front fender.
Although Wilson stated that it was not apparent from his rear view mirror that Johnson's overtaking vehicle was approaching him at an excessive rate of speed, the testimony of Johnson and his passengers indicated a speed of at least 60-70 m. p. h., and that Johnson was inattentive and did not observe the traffic ahead partly because of his greater interest in selling one of his passengers an automobile. That Johnson in his overtaking vehicle was grossly negligent does not require extended discussion.
The chief question before us is whether Wilson is barred from recovery by any contributory negligence on his part in his turning left in the manner he did and with the knowledge he had that Johnson's vehicle was overtaking his own. Our resolution of this question requires some discussion of the relative duties of forward vehicles intending to make a left turn and of overtaking vehicles intending to pass.
In Crow v. Alesi, La.App., 55 So.2d 16, certiorari denied, this Court held that the sole proximate cause of an accident involving an overtaking panel truck and a stopping or stopped gravel truck, was the failure of the overtaking driver to observe the signalled gradual stop of the forward vehicle. The accident in question, like the present, occurred on the Plank Road highway north of Baton Rouge. In discussing the duties of the forward driver, we stated, 55 So.2d 17, citing many cases:
"According to the law and jurisprudence of this state, when two automobiles are being driven along a public road in the same direction, on a country *677 road, the driver of the front car holds no duty to the car in the rear, except to use the road in the usual way in keeping with the laws of the road, and until he has been made aware of the presence of such rear car by signal or otherwise, he has a right to assume that there is no other vehicle in close proximity in his rear or, if there is one there, it is under such control as not to interfere with his free use of the road in any lawful manner. And in the absence of facts or circumstances that would put the driver of an automobile on notice of the near approach of another machine from the rear, he may drive slow or fast, select the parts of the road best suited to travel, stop or start at will. And where two automobiles are being driven along a highway in the same direction, the forward car has the superior right."
See also: 5 Am.Jur. 656, "Automobiles" Section 280; 2 Blashfield, Automobile Law and Practice 107, Section 931.
At 2 Blashfield, Automobile Law and Practice 170, Section 952, "Duty of Rear Driver on Signal of Driver of Front Car of Intention to Turn", it is stated (footnotes omitted):
"Where two vehicles are travelling in the same direction on the same street, one in the rear of the other, it is the duty of the driver of the rear car to exercise reasonable care with respect to the forward car, and, if the driver of the latter indicates by the proper signal his intention of turning into another or cross street or private drive, to yield to him that right; and upon the signal of the front driver of an intent to turn, the drivers of trailing vehicles must use ordinary care to keep their vehicles under such control as to avoid coming into collision with the vehicle from which the signals were given. But, after the driver of rear vehicle has sounded his horn to indicate his desire to pass, the driver in front should use ordinary care to avoid interference in executing such maneuver, and if the driver in front, although signalling his intention to turn to the left, turns so suddenly as to collide with the rear vehicle so attempting to pass, the former must be deemed negligent.
"A driver of an overtaken vehicle suddenly turning left without seeing the overtaking automobile, or without giving a warning signal, is negligent, and the overtaking driver is not bound to anticipate that the forward driver intends to turn.
"Questions sometimes arise as to the respective rights and duties of the drivers of front and rear cars or vehicles, when the driver in front desires to turn to the left, not at a street intersection, for the purpose of reaching his home or for some other legitimate purpose. In such case the rule is that, when the driver in front gives the statutory signal of his intention to turn to the left to a particular destination on the left side of the road, it is the duty of the overtaking driver to use reasonable care to so control his car as not to injure him, either by slowing up or by passing to the rear as the law of the road requires. Under such circumstances their respective rights are correlative, the driver in front having the right to turn into his home, using reasonable care in doing so, and the rear driver having the right to pass him, exercising reasonable care and observation, and incidentally observing the law of the road if he can do so reasonably under the circumstances.
"When the driver in the rear, notwithstanding such signal, attempts to pass to the left as the former is making his turning movement and collides with him, he is guilty of negligence, making him liable for the consequences of the collision. Where neither the passing driver nor the turning driver gave signals of their *678 intentions it has been held that the passing driver, because of his failure to signal his intention to pass, could not recover for injuries resulting from a collision when the forward car turned left."
Louisiana statute provides as to the overtaking driver: "The driver of a motor vehicle shall not follow another vehicle more closely then is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway," LSA-R.S. 32:234, subd. A. A vehicle overtaking another "shall pass at a safe distance to the left thereof" and "shall give audible and sufficient warning of his intention before overtaking, passing or attempting to pass a vehicle proceeding in the same direction", LSA-R.S. 32:233, subds. A, B.
The following other statutory provisions pertinently affect the duty of forward drivers intending to make a left turn.
LSA-R.S. 32:236 provides:
"A. The driver of any vehicle upon a highway of this state, before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give clearly audible signal by sounding the horn; and, whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this Section, plainly visible to the driver of such other vehicle, of the intention to make such movement."
LSA-R.S. 32:235 provides:
"B. * * * [T] driver of a vehicle * * * intending to turn to the left shall approach such intersection in the lane for traffic to the right of and nearest the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning to the left. * * *"
LSA-R.S. 32:237, subd. E provides:
"The driver of a vehicle entering a public highway from a private road or entering a private road from a public highway shall yield the right of way to all vehicles approaching on the public highway and to all pedestrians properly walking thereon."
As we recently reiterated in Jenkins v. Fidelity & Cas. Co., La.App., 92 So.2d 120, at page 123:
"It is well settled in Louisiana that the operator of a motor vehicle who desires to make a left turn, carries the responsibility of being certain that the turn can be made without danger to normal overtaking or oncoming traffic, and he must yield the right of way to such vehicles." (Italics ours.)
Applying these general principles to the infinitely variable circumstances of the accidents concerned, cases involving the left-turning forward driver struck by an overtaking or oncoming vehicle fall into at least three general patterns:
(1) Cases holding that the sole proximate cause of the accident was the negligence of the driver turning left suddenly and/or without signal and in the immediate path of and without yielding the right of way to approaching traffic. Washington Fire & Marine Ins. Co. v. Firemen's Ins. Co., 232 La. 379, 94 So.2d 295; Castille v. Houston Fire & Cas. Ins. Co., La. App. 1 Cir., 92 So.2d 137; Aetna Cas. & Surety Co. v. Crow, La.App. 1 Cir., 86 So.2d 212; Messina v. Audubon Ins. Co., La.App. 1 Cir., 67 So.2d 143; Graves v. Riser, La.App. 2 Cir., 62 So.2d 163; Day v. Roberts, La.App. 2 Cir., 55 So.2d 316; or holding that the left-turning driver had the clear chance to avoid the accident, Cassar v. Mansfield Lbr. Co., 215 La. 533, 41 So.2d 209.
*679 (2) Cases holding that the negligence of the left-turning driver in doing so without signalling and/or yielding the right of way and/or observing the rear vehicle; and of the overtaking driver in not making sufficient observation and/or failing to slow and/or continuing to approach the turning vehicle at a high speed; both contributed to the accident so as to bar recovery by either party. Leonard v. Holmes & Barnes, Ltd., 232 La. 229, 94 So.2d 241; Fox v. Haynes, La.App. 2 Cir., 86 So.2d 583; LaBarre v. Booth, La.App. 1 Cir., 84 So.2d 626; Saba v. Brown, La.App. Orleans, 61 So.2d 593; Fidelity & Cas. Co. of New York v. Major Oil Co., La.App. 2 Cir., 55 So.2d 326; Seaboard Ins. Co. v. Maryland Cas. Co., La.App. 2 Cir., 47 So.2d 353. See also: Washington Fire & Marine Ins. Co. v. Wallace Co., La.App. 2 Cir., 92 So.2d 777 and Jenkins v. Fidelity & Cas. Co., La.App. 1 Cir., 92 So.2d 120.
(3) Cases holding free of negligence the left-turning driver, who made proper signal and commenced a left turn upon a reasonable belief after observing approaching traffic that such turn would not unduly interfere with the progress of such approaching traffic despite which an accident occurred; the sole proximate cause of which was held to be the excessive speed, lack of lookout, and/or lack of control on the part of the approaching vehicle in failing to observe the seasonably-signalled left-turn intent of the other vehicle and continuing an approach theretowards without attempting to bring the approaching vehicle under control. Delaune v. Crawford, La.App. 1 Cir., 39 So.2d 94; Chandler v. Sentell, La.App. 1 Cir., 35 So.2d 260; Deffez v. Stephens, La. App. 1 Cir., 30 So.2d 154; Goynes v. St. Charles Dairy, Inc., La. App. 1 Cir., 197 So. 819; White v. American Employers Ins. Co., La.App. 1 Cir., 197 So. 803. See also: Moncrieff v. Lacobie, La.App. 1 Cir., 89 So.2d 471; Moore v. Benson, La.App. 2 Cir., 68 So.2d 250; Sumrall v. Myles, La. App. 1 Cir., 51 So.2d 411; Russo v. Aucoin, La.App. 1 Cir., 7 So.2d 744; Weitkam v. Johnston, La.App. Orleans, 5 So.2d 582.
We do not think to be manifestly erroneous the determination of the trier of fact that the instant accident falls within the group of cases of the latter factual pattern, so that the negligence of the overtaking driver herein constitutes the sole proximate cause of the present accident.
We find the instant facts to be very similar to those in DeLaune v. Crawford, La.App., 39 So.2d 94, decided by this court, where we held that the plaintiff's recovery was not barred, when his driver made (as here) a "slow turn" left and was struck from behind by an overtaking vehicle. The latter's driver's excessive speed, lack of lookout, and imprudent attempt to pass plaintiff's vehicle were held to be the sole proximate cause of the accident. In so holding, we observed (quoting from an earlier decision), 39 So.2d 100:
"* * * While a motorist in making a left hand turn on a highway in the face of oncoming traffic is required to exercise great caution and see that such turn can be made in safety, such a rule does not prevent the motorist from making the left turn if the oncoming traffic is of a sufficient distance to permit the execution thereof prior to the reaching of the oncoming traffic at the turning point. In judging whether or not such a left hand turn can be made in safety, a motorist has the right to assume that the oncoming traffic is traveling at a lawful speed and that the driver thereof is exercising a proper lookout and has the vehicle under proper control."
While perhaps it may be argued that the DeLaune case is somewhat distinguishable from the present, since the presence of the overtaking vehicle was obscured by the hump of an overpass over which it was approaching, of course as noted in the above quotation, even had the turning driver observed same "a sufficient *680 distance" behind her, she was entitled to proceed with her left turn upon the assumption that such rear vehicle was travelling at a legal speed and with proper lookout and sufficient control. See White v. American Employers Ins. Co., La.App., 197 So. 803, also involving "a slow and gradual" left turn by a car struck by an excessively speeding and deficiently observing oncoming driver, whose negligence was held to be the sole proximate cause of the accident.
In the present instance, we think that having persistently signalled and manifested his left-turning intention, Wilson was under no duty to expect such grossly excessive speed and such grossly deficient lookout and control on the part of the overtaking Johnson vehicle. The cases relied upon by appellant are in the main distinguishable as involving left turns made suddenly or without warning when the overtaking or oncoming vehicle was far closer than in the present instance or under circumstances wherein the forward driver should reasonably have observed that his turning would create danger to the progress of normal overtaking traffic.
Appellant relies on Michelli v. Rheem Mfg. Co., La.App. Orleans, 34 So.2d 264, to the effect that the excessive speed of the other vehicle involved in an accident with a left-turning driver was not a contributory proximate cause of the accident therein involved. It is sufficient to state that the Michelli case involved a left turn in the face of an oncoming vehicle, not an overtaking vehicle as herein. Especially because of his statutory duty to maintain sufficient distance between himself and forward vehicles, LSA-R.S. 32:234, subd. A, a driver has a greater duty to maintain a lookout and the consequently indicated speed and control of his vehicle with regard to traffic which he is overtaking in his own lane ahead, than to the oncoming traffic in the other or opposite-bound lane.
As was stated by the Supreme Court in Burns v. Evans Cooperage Co., 208 La. 406, 23 So.2d 165, at page 169, in denying recovery to an overtaking driver who failed to observe the slowing of the forward vehicle preparatory to its intended left turn:
"It is the duty of the driver operating an automobile, upon approaching another automobile from the rear while both cars are travelling in the same direction, to exercise a great deal of care. He must look out for the person ahead, realizing that that person is engaged in handling a high-powered machine requiring constant attention and that his lookout is forward and not backward. The driver of the rear car must keep a safe distance behind the front car and must have his machine under such control as to avoid injury to the car ahead or to his own car so long as the driver of the front car is driving in accordance with his rights. The evidence in this case shows that plaintiff was not operating his car in accordance with this rule. He was driving his automobile at an excessive rate of speed, paying little or no attention to the surrounding facts and circumstances, with the result that he suddenly came upon a truck that was slowing down [preparatory to making a left turn], causing plaintiff to turn to the left in order to avoid a rear-end collision. In other words, the record in this case discloses that the accident was caused by plaintiff's negligence and not by the negligence of defendants' truck driver."
See also cases holding the negligence of an overtaking vehicle striking a forward vehicle to be the sole proximate cause of the accident, such as Beard v. A. R. Blossman, Inc., La.App. 1 Cir., 94 So.2d 87; Price-Dunham-Fenet Brick Mfg. Co. v. Reeves, La.App. 1 Cir., 85 So.2d 635; August v. Delta Fire & Cas. Co., La.App. 1 Cir., 79 So.2d 114; Mellow Joy Coffee Co. v. Continental Cas. Co., La.App. 1 Cir., 63 So.2d 888.
*681 Appellants argue that Wilson's long angling left turn, drawing over the centerline of the highway prior to reaching the point of turn, did not comply with the statutory manner of making a left turn, LSA-R.S. 32:235, subd. B, and constituted negligence barring his recovery.
Assuming that the forward driver was negligent in pulling over some 70-odd feet prior to the driveway and straddling the center of the highway preparatory to a left turn thereinto, nevertheless the overtaking driverat that time some 400 feet distant behindwas under a duty to observe this maneuver of the forward vehicle and not to continue at excessively high speed in his unwarned onset upon the forward car; it was his duty, as observed in a similar situation, "either to have waited until he was certain of the [forward] laundry truck or have approached that truck with his own truck under such control as to stop promptly and avoid the collision." Myers v. Traders & Gen. Ins. Co., La.App. 2 Cir., 81 So.2d 130, at page 132. See also Callia v. Rambin, La.App. 2 Cir., 78 So.2d 44, 45. If the overtaking driver had sounded his horn and the forward vehicle straddling the center of the highway had violated its statutory duty by not giving way, the driver of the overtaking vehicle may still have been held solely liable for the accident on the ground that he had the last clear chance to avoid same, cf. Greer v. Ware, La.App. 2 Cir., 187 So. 842. All the more so in the present case, where the evidence preponderates to the effect that the overtaking driver did not sound his horn (until immediately before the impact) but continued unabated his approach at high speed despite the continuing movement of the forward vehicle, astraddle the center of the highway and veering leftward, commenced when the rear vehicle was about four hundred feet behind, with apparent unawareness of the continued approach and intention to pass of the other vehicle. A violation of a statutory duty does not constitute actionable negligence nor bar recovery unless such violation is a proximate cause of an ensuing accident. Sanders v. Hisaw, La.App. 1 Cir., 94 So.2d 486; Rayburn v. Cotton Baking Co., La.App. 2 Cir., 68 So.2d 260.
We are unable to accede to appellants' forceful argument that the left-turning driver is always barred from recovery when he proceeds to attempt a left turn, despite the presence of other traffic upon the highway. The left-turning driver is required to yield the right of way to and prohibited from attempting his turn unless the way is clear fromnot all approaching traffic, howsoever distant, but only approaching traffic "which will be unduly delayed" by his turn, LSA-R.S. 32:235, subd. A. "The turning driver, after a proper signal for a left turn and observing nothing that would indicate his signal is not being obeyed, is entitled to assume that other drivers will obey the law and exercise reasonable care. Where he gives a proper signal, he is not required to pull off the highway to the right and wait for a vehicle, travelling in the same direction, to pass," 2 Blashfield, Automobile Law and Practice 477, Section 1171.
As Judge Regan for the Orleans Court of Appeal stated several times, most recently in Ward Baking Company v. City of New Orleans, 94 So.2d 720, at page 722-23, in determining what is negligent conduct "there is no fixed rule; the facts and environmental characteristics of each case must be considered and treated individually. Judicially we are tending more and more towards an appreciation of the truth that, in the last analysis, there are few rules; there are principally standards and degrees for the reason that no one is so gifted with foresight that he or she could anticipate every possible human event and prescribe the proper rule for each." The line cannot be drawn in the abstract as to where, under the infinitely variegated factual patterns possible, the actual actions and reactions of living everyday motorists conform (or fail to do so) to those within the ambit permitted to the mythical reasonably prudent motorist using ordinary care. Fully recognizing that this is a case close *682 to the shadowy area within which the leading driver's left turn despite the presence of traffic to his rear shades from a non-contributory to a contributory cause of the accident, we cannot say, on the basis of the record before us, that the jury, as the trier of fact, committed manifest error in finding that the sole proximate cause of the accident was the excessive speed, the gross lack of lookout, and the lack of control of Wilson, the overtaking driver, or that at any rate he had the last clear chance to avoid the accident in question.
This suit for property damage to his car was brought by Johnson, "individually and for the use and benefit of the American Automobile Insurance Company", his collision insurer, which was also his liability insurer; defendant Wilson answered, and reconvened for his own damages not only against Johnson, but also against the American Automobile Insurance Company, Johnson's liability insurer. Appellants urge that the insurer, not a party to the suit, could not be made so by reconventional demand, citing Lyons v. Fry, 112 La. 759, 36 So. 674.
However, while this may be so as to a genuine third party, it is well settled that a reconventional demand may be asserted in the same proceedings against a real party in interest appearing through a nominal plaintiff. Smith v. Atlas Steam Cordage Co., 41 La.Ann. 1, 5 So. 413; Dugas v. Lewis-Chambers Const. Co., La.App. Orleans, 187 So. 117; 80 C.J.S. Set-Off and Counterclaim § 49, p. 80. And it appears from the face of the petition, as well as is shown by the record, that the said insurer made defendant in reconvention was a real party in interest instituting the present suit.
With regard to the question of the damages awarded, appellant urges that we cannot consider the deposition introduced in evidence of a neurosurgeon from Shreveport, on the ground that the record does not affirmatively show a proper foundation for its introduction. By this, counsel in brief indicates that the record does not show that the Shreveport physician was "at a greater distance than 100 miles from the place of trial [Baton Rouge] or hearing or is outside the state", LSA-R.S. 13:3745, the apparent predicate upon which the testimony of the physician was introduced by deposition rather than through his personal presence. Aside from the fact that we perhaps are permitted to take judicial notice that Shreveport is more than 100 miles distant from Baton Rouge, we are not inclined to believe that a blanket objection to the admissibility of a deposition, not specifying at the time the basis thereof (and thus giving an opportunity to the trial court to rule upon the defect or to opposing counsel to remedy same), adequately preserves the technical grounds thereof for appellate review.
Appellant likewise urges, without citation of authority, the proposition that this neurosurgeon's testimony was inadmissible because the diagnosis was that of a "definite possibility" of a herniated disc as well as whiplash injuries, and thus does not meet the alleged test of proving same with reasonable certainty. This objection of course, goes to the weight rather than the admissibility of the testimony. The proof of an injury to a legal certainty means proving same by a preponderance of the whole evidence, which includes, inter alia, the medical possibilities and probabilities, the patient's complaints and the reasonableness thereof in relation to the initial trauma and objective indicia, and the evaluation by the trier of fact of the genuineness of the patient's complaints in the context of the meanings to be assigned to same, if genuine, according to the medical experts. Furthermore, in a sense the testimony of the physician was establishing to a legal certainty Wilson's claim for damages because of a definitely possible herniated disc, in itself this being compensable in damages if a result of the accident.
Special damages of $507.37 were stipulated, and the jury additionally awarded Wilson $8000.00 for his personal injuries (including some $300 of additionally *683 proven minor special damages such as a loss of earnings). The personal injuries consisted of a painful whiplash injury; with (at the time of trial) a definite possibility of a herniated intervertebral disc, based upon objective symptoms and subjective complaints, and the consequent definite possibility of either permanent disability or of major surgery costing about $1,350 in all and a six months' loss in earnings or an additional $1,320, in special damages. (Counsel attaches to brief a report of the specialist, after a myeologram made subsequent to trial, verifying the existence of a herniated cervical disc; which, not having been introduced in evidence, cannot be considered in maximization of the award.) We cannot say that the award in question was either manifestly excessive or manifestly inadequate, and beyond the discretion under Article 1934, subd. 3, LSA-Civil Code, of the trier of fact in fixing such awards. Baker v. U. S. Fire Ins. Co., La.App. 1 Cir., 89 So.2d 405; Merchant v. Montgomery Ward & Co., La.App. 1 Cir., 83 So. 920; Hogg v. Department of Highways, La.App. 2 Cir., 80 So.2d 182.
For the above and foregoing reasons, the judgment of the District Court is affirmed.
Affirmed.