HALL, Judge.
Plaintiff sued Sylvester Carruth (hereinafter referred to as “defendant”) and his public liability insurer for alleged injuries and property damage sustained by him as the result of an accident in which defendant’s stake body truck struck plaintiff’s parked and unoccupied pick-up truck from the rear allegedly causing the parked vehicle to jump forward and strike plaintiff who was standing nearby. The Trial Court rendered judgment in favor of plaintiff for $3,500.00 and defendant and his insurer appealed. Plaintiff asks that the judgment be affirmed.
The accident occurred in the City of New Orleans about 10:30 A.M. on February 28, 1963. Plaintiff’s pick-up truck had stalled in the intersection of North Rampart and Governor Nicholls Streets and plaintiff had pushed it into Governor Nicholls Street towards the river and had parked it at the curb line in front of an automobile repair shop operated by one Alison Hamburger located on the left or downtown side of Governor Nicholls Street a car length or so from the corner of North Rampart. Hamburger came out to the stalled truck and, suspecting that the voltage regulator was out of order, raised the hood and was leaning over preparing to inspect the regulator when the accident occurred. Exactly where plaintiff was standing at the time is in dispute.
Defendant’s truck occupied by himself and being driven by his employee, Spencer Patterson, had been proceeding downtown on North Rampart Street. At the corner of Governor Nicholls Street Patterson made a wide right turn into Governor Nicholls Street toward the river and in so doing some part of defendant’s truck (defendant’s witnesses say the left rear “clearance light”) struck the right rear of plaintiff’s parked truck allegedly driving it forward and into plaintiff knocking him down.
Plaintiff alleges a complete anesthesia of his whole body as a result of a conversion reaction or traumatic psychoneurosis brought about by the accident. Defendant and his liability insurer contend that “the judgment of the Trial Judge was manifestly erroneous as the plaintiff did not bear the burden of proof and did not establish neurosis disability by a fair preponderance of the evidence.”
Although defendant admits that his truck came into contact with the rear of plaintiff’s parked vehicle, defendant contends that the blow was only a slight glancing blow and did not move the parked truck “over two inches.” Defendant also contends that plaintiff was not standing where he could be hit even if the parked vehicle was propelled forward “about two feet” as plaintiff contends. The issues are pure *402 ly factual and it would serve no purpose to •review the testimony in detail. Although the testimony is full of discrepancies and contradictions the Trial Court found that the blow was sufficient to bump the parked •vehicle forward into plaintiff and that plaintiff was in fact struck and knocked down -by it. After a careful review of the rec-ord we cannot say that the Trial Court’s findings were manifestly erroneous. See Aime v. Nola Cabs, La.App., 75 So.2d 526; Johnson et al. v. Wilson, La.App., 97 So.2d 674; Fontenot v. Snow, La.App., 149 So.2d 172.
Appellants’ main contention seems to be -that plaintiff’s proof is insufficient to establish that plaintiff is suffering from a psycho-neurosis as a result of the accident.
The proof is overwhelming that at the -•time of the trial plaintiff was suffering from •complete anesthesia or loss of feeling “involving the very top of the head right down -■to the toes.” This was not only testified to by a competent neuro-surgeon but was demonstrated in open court by tests performed by the doctor on plaintiff’s body.
Approximately three weeks prior to the .accident, to wit on February 6, 1963, plain-tiff consulted Dr. Frederick F. Boyce, a -general surgeon, complaining of having had a pain in the right side of his head for -many years. He also complained of abdominal discomfort and increased fatigueability ■of his lower extremities. He was hospitalized on February 11 by Dr. Boyce who call•ed in Dr. Raeburn C. Llewllyn, a neuro-sur-;geon, to evaluate plaintiff’s facial pain. Dr. Llewellyn gave plaintiff a full and complete neurological examination and concluded that the facial pain was a variant of mi■graine. He found plaintiff completely normal from a neurological standpoint and testified that his -examination failed to reveal, .at that time, any loss of sensation in any part of plaintiff’s body. This examination was conducted just 16 days prior to the accident. Plaintiff improved from the migraine medication prescribed for him and was discharged and left the hospital on foot ■on or about February 20th.
Immediately following the accident on February 28, 1963 plaintiff was readmitted to the hospital and was there again examined by both Dr. Boyce and Dr. Llewellyn. Neither doctor found any evidence of a bruise or abrasion or any discoloration of the skin. Plaintiff’s chief complaint was paralysis from the waist down. Dr. Llewellyn again gave plaintiff a complete neurological examination (within four hours after the accident) and found that plaintiff had a total sensory loss from his mid-waist down. Again the spinal fluid was found to be normal in its entirety, and the fact that the deep tendon reflexes were normal led Dr. Llewellyn to conclude that “the total complaints were of an inorganic, that is a psychic or emotional type of response rather than an organic type.” He testified that he could not account for plaintiff’s paralysis and loss of sensation from a neurological standpoint and concluded “they were best accounted for on the basis of a reaction to an injury.” Dr. Llewellyn gave plaintiff a follow-up examination on May 30, 1963 and found that, instead of having improved, plaintiff’s “sensory loss had become total, that is, involving the very top of the head right down to the toes.” Dr. Llewellyn concluded that plaintiff was not feigning in his responses and since there was no neurological basis for his condition he was of the opinion that it was of a “psychiatric origin.”
Plaintiff was examined by Dr. Menendez, a vascular surgeon, on February 15, 1963 (before the accident) who found that plaintiff had arteriosclerosis but stated that that would not in his opinion account for a loss of sensation. Dr. H. R. Soboloff, an orthopedist, gave plaintiff a thorough orthopedic examination on April 19, 1963 (after the accident) and found him entirely normal from an orthopedic standpoint. The record leaves no doubt that the anesthesia with which plaintiff is afflicted is due to other than organic causes.
In February of 1964, approximately one year after the accident, plaintiff was examined by Dr. Don F. Carlos, a psychiatrist, *403 who testified that the total anesthesia >of plaintiff’s body was. brought about by a conversion reaction or neurosis precipitated by the accident of February 28, 1963.
Appellants attack Dr. Carlos’ diagnosis on the ground that he saw plaintiff only twice for a total of approximately 75 minutes; that he did not examine plaintiff physically; that he did not review plaintiff’s hospital records; and more particularly on the ground that he based his opinion in part on the report of a neurological examination made at his request by a Dr. Moosy, who was not called by plaintiff and whom they did not have an opportunity to cross-examine. Since it is clear from Dr. Carlos’ testimony that Dr. Moosy’s report was negative for neurological findings, and considering that the same is true of Dr. Llewellyn’s reports, we do not find that appellants’ complaint on this score is material. Dr. Carlos might well have been cross-examined by appellants on the basis of Dr. Llewellyn’s testimony and reports.
Dr. Dennis Rosenberg and Dr. Harris Hyman, III, both testified for the defense. Dr. Rosenberg, a vascular surgeon, examined plaintiff on July 2, 1963 and, finding nothing of any significance wrong with his vascular system, referred him to Dr. Hy-man, an internist, who gave plaintiff a thorough general examination on the same day. Their examinations were conducted some four months after the accident and an effort was made to show through their testimony that plaintiff was complaining of pain in his legs at that time. However it is clear to us that what plaintiff told them was that he had had pain in his legs for some years but had been numb all over for the past three months. Dr. Rosenberg did not test him for sensory perception but Dr. Hyman did and found that he had no sensation to pin prick or vibration. Dr. Hyman could not find anything organically wrong with plaintiff and concluded that the patient presented a psychiatric problem. He agreed with Dr. Carlos’ opinion that • plaintiff’s loss of sensation was due to a conversion, reaction.
In our opinion the record fully substantiates a finding that plaintiff had a total anesthesia of the body at the time of the-trial; that this condition was not present when Dr. Llewellyn examined him shortly before the accident but manifested itself immediately following the accident and grew progressively worse; that there is. nothing organically wrong with plaintiff and that his condition can be attributed only to. a psychiatric reaction to the accident.
We are of the opinion that plaintiff has-borne the burden of proof. No issue is-made as to quantum.
For the foregoing reasons the judgment appealed from is affirmed, costs of this appeal to be borne by appellants.
Affirmed.